UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMIKA CHRISTOPHER for KCH, and
on behalf of KCH,

      Plaintiff,

v.                                                           Case No. 1:19-cv-107
                                                           Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**OPINION**

Plaintiff[1] brings this action pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), which denied supplemental security income (SSI) for KCH, plaintiff's son and the claimant in this case.

KCH was born in 2004 and found disabled on April 21, 2008, at age three. PageID.54-55. Later, it was determined that KCH was no longer disabled as of May 1, 2013. PageID.51. This determination (made on May 22, 2013, when KCH was 8 years old) was upheld upon reconsideration after a disability hearing by a State agency disability hearing officer. *Id*. A request for a hearing before an administrative law judge (ALJ) was made on KCH's behalf. *Id*. On March 22, 2017, KCH and his mother participated in an administrative hearing. PageID.75. The ALJ reviewed KCH's claim de novo, and entered a decision on November 27, 2017, finding

---

[1] The claimant in this case is a child, KCH. Timika Christopher, KCH's mother, is the nominal plaintiff.

that KCH's disability ended as of May 1, 2013. PageID.51-65. Plaintiff obtained counsel in 2018, who represented her and KCH at the Appeals Council. PageID.45. The Appeals Council denied plaintiff's request for review on December 11, 2018. PageID.37-42. Accordingly, the ALJ's decision has become the final decision of the Commissioner and is now before the court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

The Social Security Act provides that:

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). Once a child meets of burden of establishing eligibility for disability benefits, the child's "continued eligibility for such benefits must be reviewed periodically." 20 C.F.R. § 416.994a(a).

A child's entitlement to continuing social security benefits is determined by a three-step sequential analysis set out in the regulations. *See* 20 C.F.R. § 416.994a(b). At the first step, the ALJ determines whether medical improvement has occurred in the impairments the claimant had at the most recent medical determination of disability. This is known as the "comparison point decision" or CPD. Page ID.52. "Medical improvement" is defined in 20 C.F.R. § 416.994a(c) as

> any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable decision that [a claimant was] disabled or continued to be disabled. Although the decrease in severity may be of any quantity or degree, [the Commissioner] will disregard minor changes in [a claimant's] signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that [a claimant's] disability has ended. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s).

As a general rule, if there has been no medical improvement, the claimant's disability continues. *See* 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the ALJ moves to step two. *Id*.

At step two of the analysis, the ALJ determines whether the claimant's impairments still meet or medically or functionally equal the severity of the listing previously satisfied at the

3

time of the CPD.  *See* 20 C.F.R. § 416.994a(a)(1).  If so, the claimant is still disabled. *Id*. If not, the ALJ considers whether the current impairments qualify as disabling.  *Id*.

At step three of the analysis, the ALJ determines whether the claimant is disabled as of the date of hearing, considering all impairments the claimant has at that time.  *See* 20 C.F.R. § 416.994a(b)(3).  When assessing whether a minor child is currently disabled, the ALJ must first determine whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 416.994a(b)(3)(i). If the impairment is not severe, the claimant's disability has ended. *Id*.

If the child has a severe impairment, the ALJ must then determine whether the impairment meets, medically equals, or functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.994a(b)(3)(ii)-(iii).  Whether a child's impairment "functionally equals" a listed impairment is determined by a review of six "domains" which measure the child's ability to function: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and, (vi) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  To establish "functional equivalence" of a listed impairment, the claimant has to show either "marked" limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).[1]  If the impairment satisfies the criteria for a listed impairment, medically equals a listed impairment, or functionally equals a listed impairment, the claimant is considered disabled.  *See* 20 C.F.R. § 416.994a(b)(3)(ii)-(iii).  However, if the claimant's impairment does

---

[1] Under the regulations, a "marked limitation" in a domain "interferes seriously with your ability to independently initiate, sustain, or complete activities," while  an "extreme limitation" in a domain 'interferes very seriously with your ability to independently initiate, sustain, or complete activities."  *See* § 416.926a(e)(2)(i) and (3)(i).

not meet, medically equal, or functionally equal a listed impairment, the ALJ must find that the child is not disabled. *Id*.

## II. ALJ'S DECISION

At step one, the ALJ determined that the April 21, 2008 decision finding KCH disabled was the CPD for medical improvement. PageID.54. The ALJ found that

> At the time of the CPD, the claimant had the following medically determinable impairments: speech and language delays. These impairments were found to functionally equal the listings (20 CFR 416.924(d) and 416.926a).

PageID.55. At the time of the CPD, KCH had "marked limitations" in two domains (acquiring and using information, and, interacting and relating with others). PageID.55. KCH had no limitation in the other four domains (attending and completing tasks, moving and manipulating objects, caring for himself, and health and physical well-being). PageID.55.

The ALJ found that medical improvement occurred as of May 1, 2013:

> The medical evidence supports a finding that, as of May 1, 2013, there had been a decrease in medical severity of the impairments present at the time of the CPD. The claimant previously had a total language score of 55 and his speech was only 5% intelligible (Exhibit 4B). During the current speech evaluation, the claimant had a total language score of 69, and his speech was 80% intelligible to an unfamiliar listener in an unknown context (Exhibit 1F).

PageID.55.

At step two, the ALJ found that plaintiff's impairments did not meet or medically or functionally equal the severity of the listing previously satisfied at the time of the CPD, stating "[s]ince May 1, 2013, the impairments that the claimant had at the time of the CPD have not functionally equaled the Listings of Impairments." PageID.55. Specifically, KCH had "less than marked" limitations in the two domains that gave rise to his disability (acquiring and using information, and, interacting and relating with others), and "no limitation" in the other four

5

domains (attending and completing tasks, moving about and manipulating objects, caring for yourself, and, health and physical well-being). PageID.56-60.

At step three, the ALJ found that since May 1, 2013, KCH had severe impairments consisting of: speech and language delay; specific learning disability; asthma; and generalized anxiety disorder." PageID.60. The ALJ found that KCH "has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." PageID.60. Then the ALJ evaluated whether KCH has had an impairment or combination of impairments that functionally equals the listings. PageID.61. After reviewing the medical record and evidence presented at the administrative hearing, the ALJ found that since May 1, 2013, KCH's impairments resulted in the following limitations in the six domains: (i) marked limitation in acquiring and using information; (ii) less than marked limitation in attending and completing tasks; (iii) less than marked limitation in interacting and relating with others; (iv) no limitation in moving and manipulating objects; (v) no limitation in caring for himself; and (vi) less than marked limitation in health and physical well-being. PageID.63-64.

The ALJ summarized these findings, stating that "[t]herefore, beginning on May 1, 2013, the claimant has not had an impairment or combination of impairments resulting in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." PageID.64. Based on this record, the ALJ found that "[t]he claimant's disability ended as of May 1, 2013, and the claimant has not become disabled again since that date." PageID.64.

### III. DISCUSSION

Plaintiff has raised two issues on appeal:

**A. The ALJ errs by not supporting with substantial evidence, particularly the conclusion as to the "Interacting and Relating to Others" domain**

Plaintiff contends that the ALJ did not provide substantial evidence to support medical improvement in the "interacting and relating to others" domain and that KCH still has a "marked limitation" in this domain. The ALJ made the following finding with respect to this domain as of the date of medical improvement on May 1, 2013:

> This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others (20 CFR 416.926a(i)).
>
> The regulations provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand (20 CFR 416.926a(i)(2)(iv)).
>
> Social Security regulation 20 CFR 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of different ages might have. The examples do not apply to a child of a particular age; rather, they cover a range of ages and developmental periods. In addition, the examples do not necessarily describe "marked" or "extreme" limitation in the domain. Some examples of difficulty that children could have in interacting and relating with others are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people he knows, or is overly anxious or fearful of meeting new people; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express himself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.
>
> <u>Since May 1, 2013, the claimant has had less than marked limitation in interacting and relating with others as a result of the impairments present at the CPD</u>. The claimant's testing prior to the cessation date showed that his speech was only 5% intelligible (Exhibit 4B). However, Ms. McGee noted during the June 2013 speech evaluation that the claimant's speech was 80% intelligible to the evaluator

7

in an unknown context (Exhibit lF). The IEP reports note that the claimant continued to receive speech therapy but there is no mention of people having difficulty understanding the claimant (Exhibits 34E, 48E). The claimant's teacher did not mention having any issues understanding the claimant (Exhibit 47E). Accordingly, the undersigned finds that the claimant has had less than marked limitations in this domain.

PageID.57- 58 (emphasis in original).

After reviewing all of the domains, the ALJ concluded,

In summary, since May 1, 2013, the claimant's impairments present at the CPD have not resulted in either "marked" limitation in two domains of functioning or "extreme" limitation in one domain of functioning. Consequently, these impairments have not functionally equaled the listings since May 1, 2013.

PageID.60.

Then, the ALJ made the following finding with respect to this domain as of the date of the hearing on March 22, 2017:

Since May 1, 2013, the claimant has had less than marked limitation in interacting and relating with others. The undersigned has addressed above the claimant's issues in this domain due to his speech/language delay. The claimant further has restrictions in this domain because of his anxiety, which has caused some behavioral issues (Exhibits 6F, l0F/2-7, Hearing Testimony). The claimant and his mother both mentioned that he got into trouble at school but there is nothing in the record (Hearing Testimony). The claimant's October 2016 IEP report even noted that he had good social skills and had not been in trouble (Exhibit 48E). The claimant stated that he has friends as well (Exhibit 1F, Hearing Testimony). The claimant's teacher indicated that the claimant had no problem playing cooperatively and making friends (Exhibit 47E). Accordingly, the undersigned finds that the claimant has had less than marked limitations in this domain.

PageID.63-64 (emphasis in original).[2] After reviewing all of the domains, the ALJ concluded that, "[t]herefore, beginning on May 1, 2013, the claimant has not had an impairment or combination of impairments resulting in either 'marked' limitations in two domains of functioning or 'extreme'

---

[2] The Court notes that the ALJ's decision uses the term "since May 1, 2013" to designate plaintiff's condition on the date of medical improvement (May 1, 2013) (step two) and plaintiff's condition as of the date of the hearing March 22, 2017 (step three).

8

limitation in one domain of functioning." PageID.64.

Plaintiff contends that the ALJ failed to provide substantial evidence to support her determination that KCH's limitations in the domain of "interacting with others" should have been decreased from "marked limitations." The Court agrees with defendant that plaintiff's arguments appear to conflate the two different determinations made by the ALJ, *i.e.*, first, that KCH's impairments exhibited medical improvement as of May 1, 2013, and second, that KCH was not disabled after May 1, 2013. KCH's disability arose due to his speech and language delays. The ALJ noted that between the CPD and the testing performed on May 1, 2013, plaintiff's speech improved from only 5% intelligible to 80% intelligible. After KCH's speech improved, he still had limitations in this domain from anxiety and behavioral issues. However, the ALJ explained that this condition resulted in a less than marked limitation. Substantial evidence supports the ALJ's evaluation of this domain of functioning. Accordingly, plaintiff's claim of error is denied.

### B. The ALJ errs by breaching the special duty to develop a full and fair record for an unrepresented claimant

Plaintiff contends that the ALJ breached her special duty to develop a full and fair record because KCH was an unrepresented claimant. The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). The ALJ's special, heightened duty to develop the record is triggered when three special circumstances exist: the claimant is without counsel; the claimant is not capable of presenting an effective case; and, the claimant is unfamiliar with hearing procedures. *See*

*Wilson v. Commissioner of Social Security*, 280 Fed. Appx. 456, 459 (6th Cir. 2008), citing *Lashley*, 708 F.2d at 1051-52.

Here, the claimant in this case was a child who was previously found to be disabled. In the Court's opinion, such a claimant is neither capable of presenting an effective case nor familiar with hearing procedures. While KCH's mother acted as his representative, the Court does not equate his mother as an attorney or representative for purposes of the ALJ's special duty.[3] The Court concludes that these facts triggered the ALJ's special, heightened duty to develop the record.

The Court further concludes that the ALJ discharged this special duty and developed the record to ensure a fair hearing for KCH. At the administrative hearing, the ALJ confirmed that plaintiff received exhibits (1A through 6F). PageID.78. The ALJ spent a considerable amount of time asking KCH questions regarding his age, his school, his teachers, his grades, his interests, his friends, why he gets into trouble, whether he has gotten into fights, his personal grooming, his chores, his limitations, and what he does for fun. PageID.79-86. She also asked plaintiff numerous questions about KCH's mental and physical conditions. In addition, the ALJ inquired about the names of plaintiff's teachers, confirmed that she had KCH's medical records, confirmed KCH's school to obtain his school records, and advised plaintiff that she would work on a decision once she received "everything that's out there in terms of medical or educational records." PageID.87-97. The ALJ noted that she received additional records after the hearing (Exhs. 47E, 48E, 51E, 7F-10F), that she sent an interrogatory to an impartial medical expert and received a reply (Exh. 11F), and that she proffered the evidence to plaintiff and

---

[3] The Court notes that while KCH's mother acted as his representative, she waived the right to an attorney at the commencement of the administrative hearing. PageID.77-78.

claimant, but they did not respond (Exh. 50E).  PageID.51.  Finally, the ALJ held the hearing over the telephone to accommodate plaintiff.  PageID.75.[4]

Based on this record, the ALJ scrupulously and conscientiously explored all the relevant facts when adjudicating KCH's claim.  In short, she discharged her special duty to develop the record for an unrepresented claimant.  Accordingly, plaintiff's claim of error is denied.

### IV.     Conclusion

For the reasons discussed, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.

Dated:  March 31, 2020 /s/ Ray Kent
United States Magistrate Judge

---

[4] After introducing herself, the ALJ stated that: "I will be presiding over the hearing today.  The hearing is being conducted by telephone as I understand there is difficulty with you getting you and your son here in Valparaiso for the hearing so we're moving forward by telephone."  PageID.75.